**SO ORDERED.**

**SIGNED this 7 day of April, 2020.**



_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **ROBERT CHESTER NOCEK,** | **19-01364-5-SWH** |
|     **DEBTOR** | |

### ORDER ALLOWING, IN PART, DEBTOR'S MOTION FOR SANCTIONS FOR VIOLATION OF AUTOMATIC STAY AND DISCHARGE INJUNCTION

This matter came before the court on the motion for sanctions filed by the debtor Robert Chester Nocek ("debtor" or "Mr. Nocek"), seeking sanctions against Gino Sesto d/b/a Dash Two for violations of the automatic stay and discharge injunction. A hearing was held on January 21, 2020, after which the court took the matter under advisement. On March 30, 2020, the court entered an order allowing the motion in part on grounds that Mr. Sesto, dba Dash Two, violated the automatic stay in connection with an email communication sent by Mr. Sesto to the debtor on April 24, 2019. (Dkt. 31) The order awarded attorney's fees as damages for that violation, and further provided that the bases for the court's determination would be more fully set forth in an opinion to follow. Those bases are set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Nocek filed a voluntary petition for relief pursuant to chapter 7 of the Bankruptcy Code on March 26, 2019. Dash Two and CMI, which is the collection agency for Dash Two, were listed on the debtor's schedules as the holders of unsecured claims. Mr. Sesto is the founder of Dash Two, Inc., which is a California corporation, and is its registered agent for service of process, but Mr. Sesto was not listed on the debtor's schedules or on the creditors' matrix. A notice of the bankruptcy filing was mailed to both Dash Two and CMI by the Bankruptcy Noticing Center on March 28, 2019.

On April 2, 2019, Mr. Sesto, dba Dash Two, initiated a small claims lawsuit against the debtor in the Superior Court of California, County of Los Angeles, seeking recovery of approximately $5,617.29 from the debtor for advertising services provided to the debtor by Dash Two. Mr. Sesto filed the action as "Gino Joseph Sesto dba Dash Two." A trial date in the small claims action was set for July 11, 2019.

From April 24, 2019 and continuing until October 3, 2019, Mr. Sesto sent various emails and social media messages to the debtor. In particular, on April 24, 2019, Mr. Sesto sent an email to the debtor in which he stated that his "goal" was to obtain a lien on the debtor's house. Also on April 24th, he responded to a social media post by the debtor wherein the debtor announced that he had taken a bike ride; replying, Mr. Sesto inquired whether the debtor had "found any money on that trail" with which to pay debts.

The debtor received his discharge pursuant 11 U.S.C. § 727 on June 27, 2019. Dash Two and CMI were notified of the discharge by the Bankruptcy Noticing Center on June 29, 2019. On

July 2, 2019, counsel for the debtor attempted to personally contact Mr. Sesto via telephone.[1] That same day, counsel also sent a cease and desist letter to Mr. Sesto by both email and regular mail[2] advising him that the California state court action had been initiated in violation of the automatic stay, and requesting that Mr. Sesto "immediately cease attempting to collect from my client by continued prosecution of this action." Mr. Sesto did not appear for the trial date on July 11, 2019, and the case was dismissed without prejudice as there were no appearances from either party. In early October, Mr. Sesto sent an email to and tweeted at the debtor, with each of those communications consisting of a single derogatory term.

On October 16, 2019, the debtor filed the instant motion requesting that this court order "Mr. Sesto dba Dash Two" to cease all collection activity against the debtor and to pay all reasonable and necessary attorneys' fees incurred in the prosecution of the motion, and further that the court impose sanctions against Mr. Sesto for his willful violation of both the automatic stay and the discharge injunction. In Mr. Sesto's *pro se* response to the motion, he stated that he initiated the small claims lawsuit without any knowledge of the debtor's bankruptcy case. Mr. Sesto maintains that he received actual notice of the bankruptcy filing on July 2, 2019, when he received the email sent to him by counsel for the debtor. Upon receipt of the letter, Mr. Sesto testified, he abandoned all attempts to collect any payment from the debtor, and did not further pursue the state court action. Mr. Sesto takes the position that his continued communications, including post-discharge emails and tweets in which he referred to the debtor in a derogatory way,

---

[1] At the January 21, 2020 hearing, counsel advised the court that Mr. Sesto hung up on him before he could discuss the purposes of his phone call.

[2] This letter was mailed to the same address used by the Bankruptcy Noticing Center for Dash Two, Inc.

3

did not constitute collection activity and instead were his method of venting his frustration. Mr. Sesto subsequently apologized and acknowledged that his communications with the debtor were both immature and inappropriate. He denies that any of his actions constitute violations of the automatic stay or discharge injunction.

## DISCUSSION

The issue presented here is whether the automatic stay and/or discharge injunction were willfully violated by Mr. Sesto and, if so, what damages may be recoverable. The automatic stay as set forth in 11 U.S.C. § 362(a) prevents creditors from attempting to collect pre-petition debts owed to them by the debtor. The stay goes into effect once the debtor files a petition for bankruptcy and continues until the time the case is closed or dismissed, or the time a discharge is granted or denied. 11 U.S.C. § 362(c)(2)(C). Sanctions may be imposed on a creditor for willful violations of an automatic stay, and § 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The burden of proof is on the debtor to show a violation of the stay by the preponderance of evidence. *See, e.g., In re Franklin*, No. 19-80661, 2020 WL 570092, at \*6 (Bankr. M.D.N.C. Jan. 24, 2020); *Clayton v. King* (*In re Clayton*), 235 B.R. 801, 806 (Bankr. M.D.N.C. 1998).

The discharge injunction set forth in § 524(a)(2) "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, [or] recover," debts discharged by the order. 11 U.S.C. § 524(a)(2). As with violations of the automatic stay, suit can be brought by the debtor to hold the creditor in civil contempt if a creditor willfully violates the discharge. "While a violation of the discharge injunction does not provide

4

an express remedy akin to § 362(k) for violations of the automatic stay, § 105 allows a bankruptcy court to hold a creditor in civil contempt, and impose contempt sanctions, for violating the discharge injunction." *In re Williams*, --- B.R. --, 2020 WL 411291 *4 (Bankr. M.D.N.C. 2020), *citing Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019); *see also Bradley v. Fina*, 550 F. App'x 150, 154 (4th Cir. 2014). The standard of proof in a contempt proceeding is by "clear and convincing evidence." *E.g., Ashcraft v. Conoco, Inc*., 218 F.3d 288, 301 (4th Cir. 2000); *In re Bock*, 297 B.R. 22, 29 (Bankr. W.D.N.C. 2002). The court turns now to its discussion of the conduct at issue in this matter, and begins with the asserted violations of the automatic stay.

To establish a violation of the automatic stay, the debtor must show that (1) the bankruptcy petition was filed; (2) the debtor is an "individual," for the purpose of an automatic stay; (3) notice of the debtor's bankruptcy petition was received by the creditor; and (4) the creditor willfully violated the automatic stay. *Weatherford v. Timmark Carey Holdings, Inc. (In re Weatherford)*, 413 B.R. 273, 284 (Bankr. D.S.C. 2009). The burden of proof to show damages, actual and punitive, also is on the debtor. *In re Warren*, 532 B.R. 655, 660 (Bankr. D.S.C. 2015). The first two criteria are not in dispute here: Mr. Nocek filed a petition for bankruptcy on March 26, 2019, and Mr. Nocek is an individual for the purposes of the automatic stay.

With respect to notice, it is generally presumed that notice by mail is complete on mailing. *See* Fed. R. Bankr. P. 9006(e); *Warren*, 532 B.R. at 661-62; *Franklin*, 2020 WL 570092 at *8. A presumption of receipt applies when the mailing is properly addressed, has proper postage affixed, and was in fact mailed. *See, e.g., In re Cunningham*, 506 B.R. 334, 340 (Bankr. E.D.N.Y. 2014); *In re Robinson*, 228 B.R. 75, 81 (Bankr. E.D.N.Y. 1998). Additionally, the court's certificate of mailing creates the presumption of receipt. *See Garcia v. Direct Financial Servs., LLC*, No.

7:10CV00359, 2010 WL 4065498, at *2-4 (W.D. Va. Oct. 15, 2010) (discussing basis for and extent of presumption); *In re Rodriguez,* Adv. P. No. 14-00268, 2016 WL 2849594 (Bankr. D.P.R. May 10, 2016).

This presumption of receipt may be rebutted, although simply arguing non-receipt, without more, is inadequate. *E.g., Cunningham*, 506 B.R. at 341. Proof of a violation of the automatic stay does not require actual notice, and constructive notice may suffice. *Weatherford,* 413 B.R. at 283. In addition, it is generally the law of agency that a principal is chargeable with notice given to the agent while the agent is acting within the scope of his authority, even when the agent does not inform the principal of notice. *In re Withrow*, 93 B.R. 436, 438 (Bankr. W.D.N.C. 1988).

Here, Mr. Sesto contends that at the time he filed the state court lawsuit on behalf of Dash Two, he did not have notice of the debtor's bankruptcy. The record in this case indicates that notice of the debtor's bankruptcy filing was sent via first class mail by the Bankruptcy Noticing Center on March 28, 2019, addressed to Dash Two at its business address, to the attention of its "Managing Agent." Mr. Sesto confirmed at the hearing that the address listed on the certificate of notice is in fact the company's address, but he denies ever receiving it. While denial of receipt *standing alone* would be insufficient to persuade the court that Mr. Sesto had no notice of the debtor's bankruptcy petition, the court concludes, based on Mr. Sesto's testimony *together with* the court's virtual certainty that the notice sent on Thursday, March 28, 2019, could not and did not reach Mr. Sesto in California prior to the time he filed the state court action on Tuesday, April 2, 2019, that Mr. Sesto did not have notice of the stay when he filed the small claims action. In light of that determination, the court does not reach the fourth component of a stay violation (*i.e.*, whether the violation was "willful") in connection with the small claims suit being filed.

6

The circumstances are different with respect to two communications sent by Mr. Sesto to the debtor on April 24, 2019, one of which the court finds to be violative of the stay. While Mr. Sesto may still have had no actual knowledge of the bankruptcy filing and the automatic stay, he certainly had constructive knowledge by that point in time. In the April 24 email to the debtor, Mr. Sesto informed the debtor that his "goal" was to obtain a lien on the debtor's house. The court has no difficulty concluding that a promise to obtain a lien comes squarely within the kind of conduct prohibited by both the letter and spirit of § 362(a). *See, e.g., Siegal v. Everett (In re Siegal)*, 591 B.R. 609, 623-24 (Bankr. D. Md. 2018) (holding that courts "generally find threats to take action sufficient to constitute violations of the automatic stay"); *In re Robinson*, No. 10-12932, 2011 WL 832857, at *2 (Bankr. E.D. Va. Mar. 31, 2011) (finding that scope of "prohibited conduct is expansive, ranging from informal conduct like sending letters or making phone calls to formal conduct such as initiating judicial proceedings"). There also is no dispute as to whether the email was willful. It was intentionally sent, with the articulated intent of informing the debtor that Mr. Sesto intended to obtain a lien on the debtor's house. The Fourth Circuit has held that the willfulness requirement refers to "the intent to commit the act which violates the automatic stay, not an intent to violate the automatic stay." *In re NCVAMD, Inc.*, No. 10-03098, 2013 WL 6860816, at *2 (Bankr. E.D.N.C. Dec. 31, 2013); *see also In re Cherry*, 247 B.R. 176, 188 (Bankr. E.D. Va. 2000) (creditor need only to have committed an intentional act with knowledge of the automatic stay, not with an intent to violate stay). In sum, the April 24th email constitutes a willful violation of the automatic stay.

In contrast, the other communication alleged to violate the stay – the "bag of money on the trail" tweet sent by Mr. Sesto to the debtor – appears to the court to be a disparaging insult, and

not a collection attempt. The tweet cannot reasonably be characterized as an effort to collect a debt, and it is that conduct that the stay prohibits.

The court turns now to the violations of the discharge inunction alleged by the debtor, namely Mr. Sesto's failure to dismiss the California action notwithstanding entry of the debtor's discharge on June 25, 2019, as well as another tweet and email from Mr. Sesto to the debtor, both sent on October 3, 2019.  Notice of the discharge was sent by first class mail to Dash Two and CMI by the bankruptcy noticing center on June 29, 2019, and it is not disputed that Mr. Sesto had actual knowledge of the discharge as of July 2, 2019, on which date counsel for the debtor contacted Mr. Sesto by telephone, first class mail, and email.  *See In re Gallo*, No. 07-10958C-13G, 2012 WL 3930320, at *2 (Bankr. M.D.N.C. Sept. 10, 2012) (holding a debtor may prove actual notice by showing that debtor's counsel contacted the opposing party via letters and telephone calls). Maintaining legal action to recover a debt is, by definition, conduct precluded by the discharge injunction, so the court turns to whether Mr. Sesto's failure to affirmatively move to dismiss the pending small claims case constitutes a willful violation of the injunction.

Contending that it is, the debtor faults Mr. Sesto for failing to affirmatively "reverse the action." Instead, Mr. Sesto refrained from pursuing the suit, which caused its dismissal.  The court observes that Mr. Sesto did precisely what the debtor's counsel (quite properly) demanded of him: "[P]lease immediately cease attempting to collect from my client by continued prosecution of this action." Under the Supreme Court's recent decision in *Taggart*, "civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful" under the discharge order.  *Taggart*, 139 S. Ct. at 1799.  Here, it is true that Mr. Sesto failed to take active steps to dismiss the small claims case, but he achieved precisely the same result by not showing up to the small claims court trial date on July 11, 2019.  Prior to the ruling in *Taggart*,

8

Mr. Sesto's failure to act may have established a willful violation of the discharge injunction; post-*Taggart*, however, Mr. Sesto's decision to not appear for the small claims trial date, which necessarily resulted in dismissal of the case, is assessed under the "objectively reasonable" standard. The court concludes that Mr. Sesto in fact was objectively reasonable in determining that abandoning the small claims suit would comply with counsel's demand and with the injunction itself. Mr. Sesto did not willfully violate the discharge order by failing to affirmatively dismiss the small claims suit.

Subsequent to entry of the discharge and dismissal of the suit, Mr. Sesto communicated further with the debtor in the form of two short and mildly crude tweets and emails. These communications constitute, at most, juvenile expressions of Mr. Sesto's dislike for the debtor; they do not constitute collection activity of the kind that would violate the discharge injunction. In sum, the court finds that Mr. Sesto did not willfully violate the discharge injunction through inaction with respect to the lawsuit, or violate it at all in the post-discharge communications with the debtor.

Last, the court turns to damages. The debtor did establish that Mr. Sesto's email of April 24, 2019, constitutes a willful violation of the automatic stay and requested actual damages, including attorneys' fees, and punitive damages. The court concludes that the debtor has shown actual damages to the extent of his attorneys' fees incurred in this matter, and those fees have previously been awarded in the total amount of $2,653.80 pursuant to the court's order of March 30, 2020.

As provided in that order, the damages awarded to the debtor shall be paid by the creditor, Dash Two, because the actions taken by Mr. Sesto fall inside the scope of his agency and

employment with Dash Two. Conduct of a servant is within the scope of employment if, and only if,

> (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

RESTATEMENT (SECOND) OF AGENCY § 228(1) (1958). Conduct will fall outside the scope of employment if "it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.* at § 228(2) Actions that one takes to carry out everyday activities central to the company's operation, including but not limited to, issuing financial statements or entering contracts, fall within the scope of employment. *Weisfelner v. Hofmann (In re Lyondell Chem. Co.)*, 554 B.R. 635, 648 (S.D.N.Y. 2016). Here, Mr. Sesto was working within his scope of employment with Dash Two, as founder of the company, when he brought the small claims suit against the debtor seeking recovery of monies owed to Dash Two.

Though the debtor sought an award of punitive damages, the court believes such an award would be unfounded because the willful violation of the automatic stay by sending the "lien" email was not egregious or vindictive. "To reach the egregious . . . level, a creditor must act in a way that goes beyond mere willfulness and resemble a specific intent to violate the automatic stay." *Edwards v. B&E Transp., LLC (In re Edwards)*, 607 B.R. 530, 538 (Bankr. W.D. Va. 2019); *see also Warren v. Dill (In re Warren)*, 532 B.R. 655, 666 (Bankr. D.S.C. 2015) (holding punitive damages appropriate where creditor not only retained possession of the repossessed car after receiving notice of debtor's bankruptcy case but also demanded payment); *Franklin*, 2020 WL 570092 at *11 (awarding punitive damages based upon creditor's egregious actions, obdurate and

dismissive interactions with parties, and callous disregard for stay). Here, the debtor has not persuaded the court that Mr. Sesto's representation that he would pursue collection of the amount owed through basic legal process satisfies that higher standard.

## Conclusion

Accordingly, for the foregoing reasons, the debtor's motion for sanctions was **ALLOWED IN PART** in the court's order of March 30, 2019. In that order, Dash Two, Inc. was directed to pay, within fourteen days, the sum of $2,653.80 to the debtor's attorney, William F. Braziel, III, at 311 Edenton Street, Raleigh, North Carolina, 27601.

**END OF DOCUMENT**